IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: ) | |
| ) | Chapter 7 |
| REBECCA J. BOSSARDET, ) | |
| ) | Case No. 4-04-03417-TUC-EWH |
| Debtor. ) | |
| _____) | |
| REBECCA J. BOSSARDET, ) | |
| ) | Adv. No. 04-00085 |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM DECISION** |
| ) | |
| EDUCATIONAL CREDIT MANAGEMENT ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## I. INTRODUCTION

While the Debtor has demonstrated that she is eligible for a complete discharge of her student loan obligation, the Defendant has carried its burden of proof in demonstrating that the debt should only be partially discharged. The reasons for this conclusion are set forth in the balance of this decision.

## II. FACTS AND PROCEDURAL HISTORY

On July 9, 2004 the Debtor, Rebecca Bossardet ("Bossardet") filed a Chapter 7 petition pro se. On August 30, 2004, she filed a complaint against the Defendant, Educational Credit Management Corporation ("ECMC") seeking a § 523(a)(8) discharge of approximately

$23,000.00 in student loan debt ("Student Loan").[1] Her case was selected for a pro bono legal representation project.[2] A trial was held on April 27, 2005. At the trial's conclusion, an oral decision was entered finding that Bossardet had demonstrated that she was entitled to a § 523(a)(8) undue hardship discharge of the Student Loan because she satisfied all three prongs of the test set forth in <u>Brunner v. New York State Higher Education Services Corp. (In re Brunner)</u>, 831 F.2d 395 (2nd Cir. 1987),[3] which was adopted by the Ninth Circuit in <u>In re Pena</u>, 155 F.3d 1108, 1111 (9th Cir. 1998). That ruling is contained on the record, but will be briefly summarized in this Memorandum Decision. The balance of the decision will address the student loan creditor's request for partial discharge.

### III. ISSUES

1. Can Bossardet discharge the Student Loan under the <u>Brunner</u> test?

2. If she can, should the court invoke its powers under § 105 to partially discharge the Student Loan?

---

[1] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036.

[2] The Tucson division of the U.S. Bankruptcy Court for the District of Arizona has a Bankruptcy Pro Se Debtor Project in which law students from the James E. Rogers College of Law at the University of Arizona, assist experienced licensed bankruptcy attorneys in the pro bono representation of pro se debtors in non-dischargeability litigation.

[3] The <u>Brunner</u> test requires that Bossardet establish, by a preponderance of the evidence, that: 1) she cannot maintain, based on current income and expenses, a "minimal" standard of living and repay the Student Loan; 2) additional circumstances exist indicating that this state of affairs will persist for a significant portion of the repayment period; and 3) she made good faith efforts to repay the Student Loan. <u>Brunner</u>, 831 F.2d at 396.

2

## IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. §§ 1334(a) and 157(b)(2)(J).

## V. DISCUSSION

### A. The Debtor Satisfies the Brunner Requirements.

#### 1. The Minimal Standard of Living Requirement.

The first prong of Brunner requires that Bossardet establish that, based on her current income and expenses, she cannot maintain a minimal standard of living for herself and her dependants if forced to repay the Student Loan.[4] In re Pena, 155 F.3d at 1112. Bossardet's current income as set forth in her revised Schedule I is approximately $20.00 per month more than the expenses set forth in her revised Schedule J.

Bossardet's overall monthly expenses fall generally within the guidelines promulgated by the local panel Chapter 13 trustee ("Chapter 13 Trustee Guidelines") for a one-person household. While some of her expenses, such as her monthly phone bill, exceed the Chapter 13 Guidelines, other expenses such as transportation, charitable contributions, and miscellaneous and contingent expenses fall below the Chapter 13 Trustee Guidelines. ECMC argues that it would be more appropriate for the court to consider federal poverty guidelines in analyzing Bossardet's expenses. While the Brunner test is strict, it does not require that

---

[4] Bossardet's children are all over the age of 18. Therefore, Bossardet does not have any dependants she is legally obliged to support. The evidence demonstrated that Bossardet's two daughters who live with her (both over the age of 18) contribute money to Bossardet to help cover household expenses.

3

debtors live at or below the poverty line to obtain relief under § 523(a)(8). See In re Howe, 319 B.R. 886, 889 (9th Cir. B.A.P. 2005) (rejecting a rule that a person must fall below the poverty guidelines to discharge a student loan); see also In re Nys, 308 B.R. 436, 446 (9th Cir. B.A.P. 2004). A number of bankruptcy courts, including this one, have looked to local Chapter 13 Trustee Guidelines in analyzing the reasonableness of a debtor's expenses in deciding whether the debtor can maintain a minimal standard of living. See In re Cota, 298 B.R. 408, 415 (Bankr. D. Ariz. 2003); see also In re Stewart-Johnson, 319 B.R. 192, 197 (Bankr. D. Ariz. 2005). Because Bossardet's current expenses fall generally within the Chapter 13 Guidelines and basically equal her current income, Bossardet meets the first prong of the Brunner test.

### 2. The Additional Circumstances Requirement.

The second prong of Brunner requires that "additional circumstances" exist indicating that Bossardet's financial situation will not improve in the foreseeable future. In re Pena, 155 F.3d at 1112. The "additional circumstances" prong of Brunner need not be exceptional circumstances, such as serious illness, but may be "any circumstances, beyond mere current inability to pay, that show this inability to pay is likely to persist for a significant portion of the loan repayment period." In re Nys, 308 B.R. at 444; see also In re Moore, 315 B.R. 554, 562 (9th Cir. B.A.P. 2004).[5]

---

[5] There is no statute of limitations applicable to the collection of student loans. See 20 U.S.C. § 1091(a). Ms. Bossardet is 42½ years old. It is reasonable to assume that she will work for another 20 years, therefore, the remaining loan term will be at least that long.

4

Bossardet, a gifted teacher according to her work evaluations, started as a teacher's assistant, then attended a community college, earned a bachelor's degree, and has worked in the same school district as a teacher for the last nine years. In 1997, she consolidated various outstanding student loans to one obligation totaling $15,239.12 at 9% interest. By the time of trial, the outstanding balance on the Student Loan had increased to $23,669.75, primarily as a result of the accrual of interest during the 61-month duration of nine forbearance periods Bossardet requested and was granted. Bossardet testified that while she had received increases in pay between 2001 and 2004, that she is now at the top of her pay grade and cannot advance significantly in the future unless she obtains additional education. ECMC did not contradict that testimony.

In Nys, the Ninth Circuit Bankruptcy Appellate Panel held that the additional circumstances test is a "case by case" test, and set forth a non-exhaustive list of factors the court should take into account.[6] In this case, a number of the Nys factors are present, including:

---

[6] "[A]dditional circumstances" may include the following non-exhaustive list of factors: 1) serious mental or physical disability of the debtor or dependents; 2) debtor's obligation to pay for dependants; 3) lack of or a severely limited education; 4) poor quality of education; 5) lack of useable or marketable skills; 6) underemployment; 7) maximized income potential in the chosen educational field, and no other more lucrative job skills; 8) limited number of years remaining in work life to allow payment of the loan; 9) age or other factors that prevent retraining or relocation as a means for payment of the loan; 10) lack of assets, whether or not exempt, which could be used to pay the loan; 11) potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; 12) lack of better financial options elsewhere. In re Nys, 308 B.R. at 446-447.

5

(a) *having or being close to having "maxed out" in her career opportunities and no better financial options exist elsewhere* (Nys factors 7 and 12).

Bossardet testified that she is at the top of her pay grade and her ability to move to a higher grade is uncertain. She also testified that changing school districts to a higher-paying school district in the Tucson area is not a realistic option because school districts do not give credit for experience gained by teaching in other districts. According to Bossardet, if she moved to another school district, she would start at the bottom of the pay range;

(b) *maximized income potential in a chosen educational field and no other more lucrative job skills available.* (Nys factor 7).

Bossardet testified that she has tried to increase her income potential by obtaining certification as an ESL teacher. She does not have the funds to pursue a masters degree which is the only other way that she could significantly increase the possibility of moving up to higher pay grades;

(c) *age or other factors that prevent retraining or relocation.* (Nys factors 8 and 9).

At 42½ years old, Bossardet is not a candidate for retraining for some other profession or job. Also, she has no additional income from which to pay for such retraining. While she has no legal dependents, her

6

children are all in Tucson. She also has elderly parents who live in the area who rely on her for non-financial assistance.

(d) *potential increase in value of assets or income outweighed by rising expenses* (Nys factor 11).

Other than the fact that her car will be paid off in five years, there was no other evidence presented that Bossardet's income and the value of her assets would significantly exceed her expenses in the future. The fact that her car will be paid off does not mean that she will have the money used for the car payment available to make payments on the Student Loan. She will still have transportation expenses. The amount she pays for her car is already below the Chapter 13 Trustee Guidelines.[7] Since she is at the top of her pay grade, and most likely cannot move to a higher pay grade without further education, it is unlikely that her income will significantly increase in the future.

Considering the evidence as a whole, Bossardet has demonstrated that "additional circumstances" exist which make it unlikely that she can maintain a minimal standard of living and make payments on the Student Loan for a significant period of the loan term.

---

[7] Bossardet's revised Schedule J indicates her monthly car payment is $282.00. The Chapter 13 Trustee Guidelines permit payments of $450.00 per month for a vehicle lease.

7

3. The Good Faith Requirement.

Bossardet made $4,375.89 in payments on the Student Loan. She also timely requested and was granted nine forbearances. She testified that she unsuccessfully tried to work a repayment plan out with one of ECMC's predecessors in interest. Exhibit 37 indicates that under the most favorable plan available under the William D. Ford Federal Direct Loan Program, Bossardet would have to immediately begin making monthly payments of $163.42.[8] Furthermore, under that program, interest would continue to accrue on the unpaid balance and the payments on the Student Loan could increase substantially in the future. Bossardet, however, does not currently have disposable income from which to make $163.42 per month in payments and it is unlikely, given her "additional circumstances" that she will have that amount in the future. Accordingly, Bossardet has satisfied all three prongs of the Brunner test and is entitled to a discharge of the Student Loan.

**B. Partial Discharge**

Having found that Bossardet has satisfied the requirements of Brunner to obtain a full discharge of the Student Loan, the court turns to the question of whether she should only be granted a partial discharge. The Ninth Circuit has held that bankruptcy courts may partially discharge student loan obligations pursuant to their equitable powers under § 105. But before the court can exercise its discretion "it must first find that the portion being discharged satisfies the requirements under § 523(a)(8). In re Saxman, 325 F.3d 1168, 1175 (9th Cir.

---

[8] There are four types of repayment plans under the William D. Ford Federal Direct Loan Program. See 34 C.F.R. § 685.208 (2005).

2003). Unfortunately, Saxman provides little guidance to trial courts as to what standards should be applied in determining if the court should invoke its § 105 jurisdiction to partially discharge an already fully dischargeable loan or how to determine the amount which should not be discharged.

One of my colleagues has concluded that Saxman does not require that partial discharges be considered in every student loan case where a debtor has satisfied the Brunner test, even when the student loan creditor explicitly requests such a determination. See In re Stewart-Johnson, 319 B.R. at 198. I respectfully disagree. Congress has determined that student loans should only be discharged in cases of undue hardship due to the importance of maintaining the solvency of student loan programs. See In re Hesselgrave, 177 B.R. 681 (Bankr. D. Or. 1995). Therefore, courts should, whenever asked to do so, examine whether there are grounds to discharge only a portion of an otherwise fully dischargeable loan.

Stewart-Johnson also held, and I agree, that once a debtor satisfies the Brunner test, the burden of proof shifts to the student loan creditor to establish what amount of debt it contends would not impose an undue hardship. "The court would then merely need to determine whether the creditor has carried the burden of proof that that amount of the debt does not impose an undue hardship." In re Stewart-Johnson, 319 B.R. at 199. However, the task is not quite that simple. What must the student loan creditor demonstrate in order to meet its burden of proof? Must the creditor re-address all three Brunner prongs in order to demonstrate that partial discharge is warranted? In this case, that is what ECMC has done in its post-hearing brief in support of partial discharge. Much of the brief is a restatement of arguments asserted at or

9

before trial regarding the amount of Bossardet's expenses, the possibility of Bossardet's income increasing over time and her alleged lack of good faith. However, if the evidence demonstrates that the "additional circumstances" of the second prong of Brunner may abate in the foreseeable future, then Bossardet cannot have satisfied all the Brunner prongs, and under Saxman is not eligible for a partial discharge. See Educ. Credit Mgmt. v. Moore, 97 Fed. App. 88, 89 (9th Cir. 2004) (reversing both the bankruptcy court and district court because the debtor had not satisfied the three-part undue hardship test, debtor was not, therefore, entitled to partial discharge); but see In re Mason, 303 B.R. 459, 470 (Bankr. D. Idaho 2004) (where partial discharge was granted based on the determination that the debtor's situation would improve in two years), aff'd, 315 B.R. 554 (9th Cir. B.A.P. 2004).

Similarly, a re-examination of the good faith prong of the Brunner test will not provide any useful information about what amount of a student loan obligation should be partially discharged. The good faith test is generally a "black and white" determination. The debtor has, or has not, made a reasonable effort, in the debtor's circumstances, to make payments on a student loan. If it is found that the debtor has not done so, then the debtor has not established undue hardship under Brunner and is not eligible for any discharge of the student loan under the holding in Saxman.

In most cases when considering the issue of partial discharge, the parties and the court are left with a re-examination of the first prong of Brunner with the burden shifted to the student loan creditor to demonstrate that the debtor is currently able to make payments on a portion of the student loan and still maintain a minimal standard of living. In short, does the

evidence indicate that the debtor *currently* has sufficient income to pay part of the student loan obligation? See In re Pena, 155 F.3d at 1112-13 (requiring that the income and expenses of a debtor be examined at the time of trial).

In this case, ECMC argues that Bossardet can currently make payments of $143.56 per month and can continue to make those payments for the next twenty years at an interest rate of 4.5% (half the 9% otherwise due on the Student Loan), based on its evaluation of Bossardet's current expenses. ECMC has cited to evidence that indicates that Bossardet currently has fewer expenses than indicated in her revised Schedule J and, with some adjustments, could further lower her expenses. The amount "saved" by making the suggested adjustments by ECMC would be insufficient to pay the outstanding balance of the Student Loan plus interest or the minimum monthly amount under the William D. Ford Federal Direct Loan Program, but for the reasons discussed below, it would be sufficient to make the payment suggested by ECMC.

Bossardet admitted at trial that her car insurance was $75.00 per month less than stated in her revised Schedule J. While she testified that she believed her car insurance expense would go up, there is no evidence in the record to support that assertion. In addition, Bossardet's monthly phone expenses exceed the Chapter 13 Trustee Guidelines for this district by over $137.00 per month. While the reasons for the size of Bossardet's phone bill are understandable (her elder son is incarcerated and makes collect calls to her), he is not her

11

legal dependent and there are other less expensive ways that Bossardet can communicate with her son, by mail and/or possibly e-mail.[9]

ECMC has carried its burden of proof of demonstrating, by a preponderance of the evidence, that Bossardet can, with some adjustments to her monthly budgeted expenses, afford to make payments of $144.00 per month at 4.5% interest over twenty years.

## VI. CONCLUSION

ECMC's request to modify the Student Loan by partially discharging $1,073.44 in principal, reducing the principal balance to $22,691.36, reducing the fixed interest rate from 9% to 4.5%, and setting the term of the loan at 20 years, is granted. The foregoing are the findings of fact and conclusion of law required by Rule 7052. ECMC's counsel is directed to lodge a form of judgment setting forth the new terms of the Student Loan.

Dated this 23rd day of December, 2005.

_____
EILEEN W. HOLLOWELL
UNITED STATES BANKRUPTCY JUDGE

---

[9] Because these two adjustments to Bossardet's monthly expenses equal or exceed the monthly amount that ECMC urges be paid, ECMC's other arguments regarding ways Bossardet could "save" on her current monthly expenses will not be addressed.

12

Copy of the foregoing served as indicated below this 23rd day of December, 2005, to:

Jonathan M. Saffer
Snell & Wilmer, LLP
One South Church Ave., Suite 1500
Tucson, AZ 85701-1630
Attorneys for Debtor/Plaintiff
jmsaffer@swlaw.com

Raul Abad
Gust Rosenfeld, PLC
201 East Washington, Suite 800
Phoenix, AZ 85004
Attorneys for Defendant
rabad@gustlaw.com

Madeleine C. Wanslee
Gust Rosenfeld, PLC
201 East Washington, Suite 800
Phoenix, AZ 85004
Attorneys for Defendant
mwanslee@gustlaw.com

By _____
Judicial Assistant